IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRANCIS A. GILARDI, JR.
601 North Stolle Avenue
Sidney, Ohio 45365

PHILIP M. GILARDI                                    Civil Action No. _____
601 North Stolle Avenue
Sidney, Ohio 45365

FRESH UNLIMITED, INC., d/b/a
Freshway Foods
601 North Stolle Avenue
Sidney, Ohio 45365

FRESHWAY LOGISTICS, INC.
601 North Stolle Avenue
Sidney, Ohio 45365

   Plaintiffs,

vs.

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES
200 Independence Avenue, SW
Washington, DC 20201

KATHLEEN SEBELIUS, in her official
capacity as the Secretary of the United
States Department of Health and Human
Services
200 Independence Avenue, SW
Washington, DC 20201

UNITED STATES DEPARTMENT OF
THE TREASURY
1500 Pennsylvania Avenue, NW
Washington, DC 20220

TIMOTHY F. GEITHNER, in his official
capacity as the Secretary of the United
States Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

UNITED STATES DEPARTMENT OF
LABOR
200 Constitution Avenue, NW
Washington, DC 20210

HILDA L. SOLIS, in her official capacity as
Secretary of the United States Department
of Labor
200 Constitution Avenue, NW
Washington, D.C. 20210

　　Defendants.
_____/

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

　　Plaintiffs Francis A. Gilardi, Jr., Philip M. Gilardi, Fresh Unlimited, Inc., d/b/a Freshway Foods, and Freshway Logistics, Inc. (hereafter collectively "Plaintiffs"), by and through their attorneys, bring this complaint against Defendants United States Department of Health and Human Services, Kathleen Sebelius, United States Department of the Treasury, Timothy F. Geithner, United States Department of Labor, Hilda L. Solis, and their successors in office (hereafter collectively "Defendants"). In support thereof, Plaintiffs allege the following based on information and belief:

INTRODUCTION

　　1. Plaintiffs seek judicial review concerning Defendants' violations of Plaintiffs' constitutional and statutory rights in connection with Defendants' promulgation and implementation of certain regulations adopted under the Patient Protection and Affordable Care Act of 2010 (hereafter "Affordable Care Act"), specifically those regulations mandating that non-exempt employers include in employee health benefit plans coverage of certain goods and services, regardless of whether the provision of such coverage violates the employer's religious beliefs and moral values.

　　2. Plaintiffs ask this court for declaratory and injunctive relief from the operation of a rule

promulgated by Defendants in or about February 2012 mandating that employee health benefit plans include coverage, without cost sharing, "all Food and Drug Administration ["FDA"]-approved contraceptive methods, sterilization procedures and patient education and counseling for all women with reproductive capacity" in plan years beginning on or after August 1, 2012 (hereafter "the Mandate").  45 C.F.R. § 147.130(a)(1)(iv), as confirmed at 77 Fed. Reg. 8725 (Feb. 15, 2012), adopting and quoting Health Resources and Services Administration Guidelines[1]/ found at http://www.hrsa.gov/womensguidelines (last visited Jan. 21, 2013).

    3.   Plaintiffs Francis A. Gilardi, Jr. and Philip M. Gilardi are adherents of the Catholic faith and hold to the Catholic Church's teachings regarding the immorality of artificial contraceptives, sterilization, and abortion. They are the sole owners of Plaintiffs Fresh Unlimited, Inc., d/b/a Freshway Foods, and Freshway Logistics, Inc. with each holding 50% of the corporate shares. As the two owners with controlling interests in the two corporations, they conduct their businesses in a manner that does not violate their sincerely-religious beliefs or moral values, and they wish to continue to do so.

    4.   For approximately the last ten years, Plaintiffs' employee health benefit plan specifically has excluded contraceptives, abortion, and sterilization, pursuant to Plaintiffs' religious beliefs and moral values.

    5. Plaintiffs Francis A. Gilardi, Jr. and Philip M. Gilardi have concluded that complying with the Mandate would require them to violate their religious beliefs and moral values because the Mandate requires them and/or the corporations they own and control to arrange for, pay for, provide, and facilitate contraception methods, sterilization procedures, and abortion because certain drugs and devices such as the "morning-after pill," "Plan B," and "Ella" come within the

---

        [1]/ The Health Resources and Services Administration is an agency that is part of Defendant United States Department of Health and Human Services.

Mandate's and the Health Resources and Services Administration's definition of "Food and Drug Administration-approved contraceptive methods" despite their known abortifacient mechanisms of action.

6. Plaintiffs contend that the Mandate pressures them to either (1) comply with the Mandate and violate their religious beliefs and moral values or (2) incur ruinous fines and penalties if they choose to continue to conduct their businesses consistent with their religious beliefs and moral values.

7. Plaintiffs contend that the Mandate violates their rights under the Religious Freedom Restoration Act and the First Amendment to the United States Constitution and that it also violates the Administrative Procedure Act.

## JURISDICTION AND VENUE

8. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1346(a)(2) because it is a civil action against agencies and officials of the United States based on claims arising under the Constitution, laws of the United States, and regulations of executive departments and it seeks equitable or other relief under an Act of Congress, and also pursuant to 28 U.S.C. § 1361, as this court may compel officers and agencies of the United States to perform a duty owed Plaintiffs.

9. This court has jurisdiction to render declaratory and injunctive relief pursuant to 5 U.S.C. § 702, 28 U.S.C. §§ 2201-2202, 42 U.S.C. § 2000bb-1, and Federal Rules of Civil Procedure 57 and 65.

10. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this district and a substantial part of the acts giving rise to Plaintiffs' claims occurred in this district.

11. This court has the authority to award Plaintiffs their costs and attorneys' fees pursuant to

28 U.S.C. § 2412 and 42 U.S.C. § 1988.

## PLAINTIFFS

12. The Plaintiffs to this action are Francis A. Gilardi, Jr., Philip M. Gilardi, Fresh Unlimited, Inc., d/b/a Freshway Foods, and Freshway Logistics, Inc. Hereafter in this complaint, Plaintiffs Francis A. Gilardi, Jr. and Philip M. Gilardi will be referred to as "Francis Gilardi," "Philip Gilardi," or "Francis and Philip Gilardi"; Plaintiff Fresh Unlimited, Inc., d/b/a Freshway Foods will be referred to as "Freshway Foods"; and Plaintiff Freshway Logistics, Inc. will be referred to as "Freshway Logistics."

13. Francis and Philip Gilardi are individuals and citizens of the State of Ohio and the United States of America.

14. Francis and Philip Gilardi each hold a 50% ownership stake in Freshway Foods and Freshway Logistics, and, therefore, together they own the full and controlling interest in both companies.

15. Francis Gilardi is the Chief Executive Officer and Treasurer of Freshway Foods and Freshway Logistics and Philip Gilardi is the President and Secretary. They are the only Directors of the two corporations, and together they set the policies governing the conduct of all phases of the two corporations.

16. Freshway Foods is a closely-held and family owned fresh produce processor and packer serving twenty-three states for over twenty-four years. It has approximately 340 full-time employees.

17. Freshway Logistics is a closely-held and family owned for-hire carrier of mainly refrigerated products serving twenty-three states since 2003. It has approximately fifty-five full-time employees.

18. Freshway Foods and Freshway Logistics are both located at 601 North Stolle Avenue,

5

Sidney, Ohio, which is in Shelby County. Both entities are Subchapter S corporations and are incorporated under the laws of the State of Ohio.

## DEFENDANTS

19. Defendant United States Department of Health and Human Services (hereafter "HHS") is an agency of the United States and is responsible for the administration and enforcement of the Mandate.

20. Defendant Kathleen Sebelius is Secretary of HHS and is named as a party only in her official capacity.

21. Defendant United States Department of the Treasury is an agency of the United States and is responsible for the administration and enforcement of the Mandate.

22. Defendant Timothy F. Geithner is Secretary of the Treasury and is named as a party only in his official capacity.

23. Defendant United States Department of Labor (hereafter "DOL") is an agency of the United States and is responsible for the administration and enforcement of the Mandate.

24. Defendant Hilda L. Solis is Secretary of DOL and is named as a party only in her official capacity.

## FACTUAL ALLEGATIONS

25. Francis and Philip Gilardi hold to the teachings of the Catholic Church regarding the sanctity of human life from conception to natural death. They sincerely believe that actions intended to terminate an innocent human life by abortion are gravely sinful.

26. Francis and Philip Gilardi also sincerely believe in the Catholic Church's teaching regarding the immorality of artificial means of contraception and sterilization.

27. Francis and Philip Gilardi manage and operate Freshway Foods and Freshway Logistics in a way that reflects the teachings, mission, and values of their Catholic faith, and they desire to

continue to do so.

28. Examples of how Plaintiffs further their religious beliefs and moral values include the following:

   a. For approximately the last ten years, Francis and Philip Gilardi have affixed to the back of the trucks they own through a separate company, but which bear the name of Freshway Foods, a sign stating, "It's not a choice, it's a child," as a way to promote their pro-life views to the public;

   b. Francis and Philip Gilardi strongly support financially and otherwise their Catholic parish, schools, and seminary;

   c. In or about 2004, Francis and Philip Gilardi drafted a values statement listing values by which their companies would be run. They listed "Ethics" first since it is their primary business value: "Ethics: Honest, Trustworthy and Responsible to: - Each Other; - Our Customers; - Our Vendors. Non-negotiable - Supersedes everything";

   d. Freshway Foods makes annual monetary and/or in-kind donations, primarily food, to many community non-profit charitable organizations, including Agape, Compassionate Care, the YMCA, Holy Angel's Soup Kitchen, United Way, Habitat for Humanity, American Legion, Bill McMillian's Needy Children, Elizabeth's New Life Center, and local schools;

   e. Freshway Logistics donates a trailer for use by the local Catholic parish for its annual picnic. Freshway Logistics also uses its trucks to deliver the food donated by Freshway Foods to food banks outside the Sidney, Ohio, area;

   f. During the Monthly Associate Appreciation Lunches, Plaintiffs provide alternative foods for their employees to accommodate the types of foods their employees are allowed to eat pursuant to their religious beliefs; and

7

  g. Plaintiffs provide their Muslim employees with space to pray during breaks and lunches. During Ramadan, Plaintiffs adjust break periods to allow their Muslim employees, pursuant to their religion, to eat after sundown.

29. Moreover, Freshway Foods and Freshway Logistics provide their full-time employees with a self-insured employee health benefits plan that provides employees with health insurance and prescription drug insurance through a third-party administrator and stop loss provider. Employees of the two corporations may choose a basic option or a premier option from the plan. The plan is renewed on April 1.

30. For approximately the last ten years, Plaintiffs have specifically excluded coverage of all contraceptives, abortion, and sterilization, because paying for such services as a part of an employee health benefits plan would violate Plaintiffs' sincerely-held religious beliefs and moral values.

31. Like other non-cash benefits provided to employees, Plaintiffs consider the provision of employee health insurance an integral component of furthering their mission, values, and religious beliefs.

32. Plaintiffs cannot arrange for, pay for, provide, or facilitate employee health plan coverage for contraceptives, sterilization, abortion, or related education and counseling without violating their sincerely-held religious beliefs and moral values.

### APPLICABLE PROVISIONS OF THE MANDATE

33. Under the Mandate being challenged herein and related Affordable Care Act provisions, an employer of fifty or more full-time employees, such as Plaintiffs, must offer, unless exempted, a group health plan to employees that includes coverage for all FDA-approved contraceptive methods, sterilization procedures, and related education and counseling.

34. The Mandate does not apply to employers of fewer than fifty full-time employees unless

those employers choose to offer their employees health insurance.

35. "Grandfathered" health plans are exempted from the Mandate. Such plans were in existence as of the enactment of the Affordable Care Act on or about March 23, 2010, and have not since been materially changed.

36. Plaintiffs' group health plan is not "grandfathered" as it has been materially changed since on or about March 23, 2010, for example, by increasing doctor visit co-pays by $10 and $15 for the basic option and the premier option respectively.

37. Permanently exempt from the Mandate are "religious employers," as defined at 45 CFR § 147.130(a)(1)(A) and (B). Temporarily exempted from the Mandate are non-profit employers with religious objections to covering contraceptive services, 77 Fed. Reg. 8725 (Feb. 15, 2012), and employers who satisfy the criteria of the "temporary enforcement safe harbor" do not have to comply with the Mandate until at least August 1, 2013. "Guidance on the Temporary Enforcement Safe Harbor for Certain Employers" (Aug. 15, 2012), http://cciio.cms.gov/resources/files/prev-services-guidance-08152012.pdf. (last visited Jan. 24, 2013).

38. Plaintiffs do not qualify as "religious employers" under 45 C.F.R. § 147.130(a)(1)(A) and (B), nor can they take advantage of the "temporary enforcement safe harbor" because of their for-profit status.

39. Accordingly, the Mandate applies to Plaintiffs as they employ fifty or more full-time employees and are not otherwise exempted from the Mandate.

40. The Mandate went into effect on August 1, 2012, for non-exempt for-profit employers, such as Plaintiffs, and the Mandate applies to the first health insurance plan-year starting after August 1, 2012.

41. Plaintiffs wish to renew health insurance coverage for their full-time employees on April

9

1, 2013, while, at the same time, continuing to exclude coverage for all FDA-approved contraceptive methods, including injectable contraceptives, abortion, sterilization procedures, and related patient education and counseling, as they have been doing for the past several years.

42. Under the terms of the Mandate and absent relief from this court, Plaintiffs will be required to violate their religious beliefs and moral values by providing their full-time employees with coverage of goods, services, activities, and practices that Plaintiffs consider sinful and immoral and which are currently excluded from their existing health plan.

43. Failure to comply with the Mandate will subject Plaintiffs to incur significant fines and penalties.

44. Failure to provide health insurance that complies with the Mandate may result in fines and penalties of $100 per day for each employee not properly covered, 26 U.S.C. § 4980D, as well as potential enforcement lawsuits, 26 U.S.C. §§ 1132, 1185d.

45. Should Francis Gilardi, Philip Gilardi, and Freshway Foods, pursuant to their sincerely-held religious beliefs and moral values, not provide health insurance that complies with the Mandate for their approximately 340 full-time employees, they would be subjected to daily fines and penalties of about $34,000, totaling over $12.4 million annually.

46. Should Francis Gilardi, Philip Gilardi, and Freshway Logistics, pursuant to their sincerely-held religious beliefs and moral values, not provide health insurance that complies with the Mandate for their approximately fifty-five full-time employees, they would be subjected to daily fines and penalties of about $5,500, totaling over $2 million annually.

47. Non-exempt employers with fifty or more full-time employees that fail to provide any employee health insurance plan are subjected to annual fines and penalties of $2,000 for each full-time employee, not counting thirty of them. 26 U.S.C. § 4980H.

48. The Mandate pressures Plaintiffs into choosing between complying with the Mandate's

requirements in violation of their religious beliefs and moral values or paying ruinous fines and penalties that would have a crippling impact on their ability to survive economically. The Mandate, therefore, imposes a substantial burden on Plaintiffs' religious exercise.

49. Any alleged interest Defendants have in providing free FDA-approved contraceptives, abortifacients, sterilization procedures, and related education and counseling services, without cost sharing, is not compelling as applied to Plaintiffs. In addition, any such interest can be advanced by Defendants through other more narrowly tailored means that would not require Plaintiffs to pay for and otherwise support coverage of such items through their employee health care plan in violation of their religious beliefs and moral values.

50. Plaintiffs lack an adequate or available administrative remedy.

51. Plaintiffs lack an adequate remedy at law.

## CAUSES OF ACTION

### COUNT I

Violation of the Religious Freedom Restoration Act

52. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 51 above and incorporate those allegations herein by reference.

53. Plaintiffs' sincerely held religious beliefs prevent them from arranging for, paying for, providing, or facilitating coverage for contraceptive methods, sterilization procedures, abortion, and patient education and counseling related to such procedures.

54. The Mandate, by requiring Plaintiffs to provide such coverage, imposes a substantial burden on Plaintiffs' free exercise of religion by coercing Plaintiffs to choose between continuing to conduct their businesses in accordance with their religious beliefs and moral values or paying substantial annual fines and penalties to the government.

55. The Mandate furthers no compelling governmental interest, nor is it necessary to prevent

any concrete harm to such an interest.

56. The Mandate is not narrowly tailored to furthering any compelling interest.

57. The Mandate is not the least restrictive means of furthering Defendants' stated interests.

58. The Mandate and Defendants' threatened enforcement of the Mandate violates rights secured to Plaintiffs by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.*

59. Absent injunctive and declaratory relief against the Mandate, Plaintiffs will suffer irreparable harm, and they request the relief set forth below in their prayer for relief.

## COUNT II

Violation of the First Amendment's Free Exercise Clause

60. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 51 above and incorporate those allegations herein by reference.

61. Plaintiffs' sincerely held religious beliefs prevent them from arranging for, paying for, providing, or facilitating coverage for contraceptive methods, sterilization procedures, abortion, and patient education and counseling related to such procedures.

62. The Mandate, by requiring Plaintiffs to provide such coverage imposes a substantial burden on Plaintiffs' free exercise of religion by coercing Plaintiffs to choose between continuing to conduct their businesses in accordance with their religious beliefs and moral values or paying substantial annual fines and penalties to the government.

63. The Mandate is neither neutral nor generally applicable.

64. The Mandate furthers no compelling governmental interest, nor is it necessary to prevent any concrete harm to such an interest.

65. The Mandate is not narrowly tailored to furthering any compelling interest.

66. The Mandate is not the least restrictive means of furthering the Defendants' stated interests.

67. The Mandate and Defendants' threatened enforcement of the Mandate violates Plaintiffs' rights to the free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

68. Absent injunctive and declaratory relief against the Mandate, Plaintiffs will suffer irreparable harm, and they request the relief set forth below in their prayer for relief.

COUNT III

Violation of the First Amendment's Free Speech Clause

69. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 51 above and incorporate those allegations herein by reference.

70. The First Amendment protects organizations as well as individuals from being compelled to speak and, in many circumstances, from being compelled to subsidize the speech of others.

71. Expenditures of money are a form of protected speech.

72. The Mandate compels Plaintiffs to arrange for, pay for, provide, and facilitate coverage for education and counseling related to contraception, sterilization, and abortion, which is speech to which Plaintiffs' morally object.

73. Plaintiffs believe that the aforementioned services, activities, and practices covered by the Mandate are contrary to their sincerely-held religious beliefs.

74. The Mandate compels Plaintiffs to subsidize goods, services, activities, practices, and speech that Plaintiffs believe to be immoral and, thereby, violates Plaintiffs' right to be free from uttering, subsidizing, or supporting compelled speech with which Plaintiffs disagree on religious and moral grounds.

75. The Mandate and Defendants' threatened enforcement of the Mandate violates Plaintiffs' free speech rights as guaranteed by the First Amendment to the United States

Constitution.

76. Absent injunctive and declaratory relief against the Mandate, Plaintiffs will suffer irreparable harm, and they request the relief set forth below in their prayer for relief.

COUNT IV

Violation of the Administrative Procedure Act

77. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 51 above and incorporate those allegations herein by reference.

78. The Affordable Care Act expressly delegates to the Health Resources and Services Administration, which is an agency that is part of Defendant United States Department of Health and Human Services, the authority to establish "preventive care" guidelines that a group health plan and health insurance issuer must abide by.

79. Given this express delegation, Defendants were obliged to engage in formal notice and comment rulemaking as prescribed by law before Defendants issued the guidelines that group health plans and insurers must abide by.

80. Proposed regulations were required to be published in the Federal Register and interested persons were required to be given a chance to take part in the rulemaking through the submission of written data, views, or arguments.

81. Defendants promulgated the "preventive care" guidelines without engaging in the formal notice and comment rulemaking as prescribed by law. Defendants delegated the responsibilities for issuing "preventive care" guidelines to a non-governmental entity, the Institute of Medicine, which did not permit or provide for broad public comment otherwise required by the Administrative Procedure Act.

82. Defendants also failed to engage in the required notice and comment rulemaking when Defendants issued the interim final rules and the final rule that incorporates the "preventive care"

guidelines.

83. The Mandate violates Section 1303(b)(1)(A) of the Affordable Care Act, which provides that "nothing in this title" "shall be construed to require a qualified health plan to provide coverage of [abortion] services . . . as part of its essential health benefits for any plan year." 42 U.S.C. § 18023(b)(1)(A)(i) (codification of Section 1303 of the Affordable Care Act).

84. The Mandate violates the Religious Freedom Restoration Act as set forth in this complaint.

85. The Mandate violates the First Amendment to the United States Constitution as set forth in this complaint.

86. Defendants, in promulgating the Mandate, failed to consider the constitutional and statutory implications of the Mandate on for-profit employers such as Plaintiffs.

87. The Mandate and Defendants' actions are arbitrary and capricious, not in accordance with law or required procedure, and contrary to constitutional right, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).

88. Absent injunctive and declaratory relief against the Mandate, Plaintiffs will suffer irreparable harm, and they request the relief set forth below in their prayer for relief.

PRAYER FOR RELIEF

89. Plaintiffs repeat and re-allege all allegations made above and incorporate those allegations herein by reference, and Plaintiffs request that this court grant them the following relief and enter final judgment against Defendants and in favor of Plaintiffs:

A. Enter a declaratory judgment that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the Religious Freedom Restoration Act;

B. Enter a declaratory judgment that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the Free Exercise Clause of the First Amendment to the

United States Constitution;

C. Enter a declaratory judgment that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the Free Speech Clause of the First Amendment to the United States Constitution;

D. Enter a declaratory judgment that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the Administrative Procedure Act;

E. Enter preliminary and permanent injunctions prohibiting Defendants, their officers, agents, servants, employees, successors in office, attorneys, and those acting in active concert or participation with them, including any insurance carriers or third party insurance plan administrators with whom Plaintiffs may contract for employee health benefits, from applying and enforcing against Plaintiffs the Mandate and any related regulations, rules, statutes, laws, penalties, fines, or assessments;

F. Award Plaintiffs their costs and attorney's fees associated with this action; and

G. Award Plaintiffs any further relief this court deems equitable and just.

Respectfully submitted on this 24th day of January, 2013,

|  |  |
|---|---|
|  | /s/ Colby M. May |
| Edward L. White III* | Colby M. May |
| American Center for Law & Justice | D.C. Bar No. 394340 |
| 5068 Plymouth Road | American Center for Law & Justice |
| Ann Arbor, Michigan 48105 | 201 Maryland Avenue, N.E. |
| Tel. 734-662-2984; Fax. 734-302-1758 | Washington, D.C. 20002 |
| ewhite@aclj.org | Tel. 202-546-8890; Fax. 202-546-9309 |
|  | cmmay@aclj-dc.org |
| Francis J. Manion* |  |
| Geoffrey R. Surtees* | Erik M. Zimmerman* |
| American Center for Law & Justice | American Center for Law & Justice |
| 6375 New Hope Road | 1000 Regent University Drive |
| New Hope, Kentucky 40052 | Tel. 757-226-2489; Fax. 757-226-2836 |
| Tel. 502-549-7020; Fax. 502-549-5252 | ezimmerman@aclj.org |
| fmanion@aclj.org |  |
| gsurtees@aclj.org | * Pro hac vice applications forthcoming |