**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                                    |   |                              |
|----------------------------------------------------|---|------------------------------|
| FRANCIS A. GILARDI, JR., *et al.*                  | ) |                              |
|                                                    | ) |                              |
| Plaintiffs,                                        | ) |                              |
|                                                    | ) | Civil Action No. 13-104(EGS) |
| v.                                                 | ) |                              |
|                                                    | ) |                              |
| KATHLEEN SEBELIUS, *et* al.                        | ) |                              |
|                                                    | ) |                              |
| Defendants.                                        | ) |                              |
|                                                    | ) |                              |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs Francis A. Gilardi, Jr., Philip M. Gilardi, Fresh Unlimited, Inc., d/b/a Freshway Foods, and Freshway Logistics, Inc. filed a complaint on January 24, 2013 seeking declaratory and injunctive relief against defendants United States Department of Health and Human Services, Kathleen Sebelius, United States Department of the Treasury, Timothy F. Geithner, United States Department of Labor, Hilda L. Solis, and their successors in office. Plaintiffs allege several causes of action. Count I alleges a violation of the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb, *et seq.* Count II alleges a violation of the First Amendment's free exercise clause. Count III alleges a violation of the First Amendment's free speech clause. Finally, Count IV alleges a violation of the Administrative Procedure Act.

Pending before the Court is plaintiffs' motion for a preliminary injunction.  Plaintiffs seek injunctive relief as to Count I and allege that certain federal regulations promulgated under the Patent Protection and Affordable Care Act ("Affordable Care Act" or "ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), violate plaintiffs statutory rights under the Religious Freedom Restoration Act ("RFRA"), Pub. L. No. 103-141, 107 Stat. 1488 (1993) (codified at 42 U.S.C. §§ 2000bb-1).  Upon consideration of the motion, the opposition and reply thereto, the *Amicus Curiae* Brief of the State of Ohio, the entire record, and for the reasons explained below, plaintiffs' motion is **DENIED**.

## I.   BACKGROUND

Francis A. Gilardi, Jr. and Philip M. Gilardi (collectively the "Gilardis"), are Ohio residents and "adherents of the Catholic faith" who "hold to the Catholic Church's teachings regarding the immorality of artificial contraceptives, sterilization, and abortion."  Compl. ¶ 3.  The Gilardis are the sole owners of plaintiffs Fresh Unlimited, Inc., d/b/a Freshway Foods ("Freshway Foods") and Freshway Logistics, Inc. ("Freshway Logistics") (collectively the "Freshway Corporations"), both of which are Subchapter S corporations and are incorporated under the laws of the State of Ohio.  The Freshway Corporations are engaged in the processing, packing, and shipping of produce and other refrigerated products, Compl. ¶¶ 16-18, and have a total

2

of about 400 employees between the companies, *id.* ¶¶ 17-18. The Gilardis each own a 50% share in the Freshway Corporations. They state that "[a]s the two owners with controlling interests in the two corporations, they conduct their businesses in a manner that does not violate their sincerely-held religious beliefs or moral values, and they wish to continue to do so." Compl. ¶ 3.  The Freshway Corporations provide their full-time employees with a self-insured employee health benefits plan that provides employees with health insurance and prescription drug coverage through a third-party administrator and stop-loss provider.  Compl. ¶ 29.  The plan is to be renewed on April 1, 2013.  *Id.*

Plaintiffs' claims arise out of certain regulations promulgated in connection with the Affordable Care Act.  The Affordable Care Act requires that all group health plans and health insurance issuers that offer non-grandfathered group or individual health coverage to provide coverage for certain preventive services without cost-sharing, including, for "women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [("HSRA")]."  42 U.S.C. § 300gg-13(a)(4).  The HSRA, an agency within the Department of Health and Human Services ("HHS"), commissioned the Institute of Medicine ("IOM") to conduct a study on preventive services

3

necessary to women's health.  On August 1, 2011, HSRA adopted IOM's recommendation to include "the full range of Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity."  *See* HRSA, Women's Preventive Services: Required Health Plan Coverage Guidelines ("HRSA Guidelines"), *available at* http://www.hrsa.gov/womensguidelines/ (last visited Mar. 2, 2013).

Several exemptions and safe-harbor provisions excuse certain employers from providing group health plans that cover women's preventive services as defined by HHS regulations. First, the mandate does not apply to certain "grandfathered" health plans in which individuals were enrolled on March 23, 2010, the date the ACA was enacted.  75 Fed. Reg. 34538-01 (June 17, 2010).  Second, certain "religious employers" are excluded from the mandate.  76 Fed. Reg. 46,621 (Aug. 3, 2011); 45 C.F.R. § 147.130(a)(1)(iv)(A); see 78 Fed. Reg. 8456, 8459 (Feb. 6, 2013) (proposing to broaden the August 2011 definition of religious employer to ensure that "an otherwise exempt employer plan is not disqualified because the employer's purposes extend beyond the inculcation of religious values or because the employer serves or hires people of different religious faiths"). Third, a temporary enforcement safe-harbor provision applies to

certain non-profit organizations not qualifying for any other exemption.  77 Fed. Reg. 8725, 8726-77 (Feb. 15, 2012).

The parties agree that the Freshway Corporations do not qualify for any of these exemptions.  As secular, for-profit employers, Freshway Foods and Freshway Logistics do not satisfy the definition of "religious employer" and are not eligible for the protection of the safe-harbor.  The grandfathered plans provision also does not protect the corporations because the current health insurance plan has undergone material changes since 2010, including an increase in the cost of doctor visit co-pays.  *See* Decl. of Francis A. Gilardi, Jr., ECF No. 21-2, at ¶ 13.

The Gilardis state that they "have concluded that complying with the Mandate would require them to violate their religious beliefs and moral values because the Mandate requires them and/or the corporations they own and control to arrange for, pay for, provide, and facilitate contraception methods, sterilization procedures, and abortion because certain drugs and devices such as the 'morning-after pill,' 'Plan B,' and 'Ella' come within the Mandate's . . . definition of 'Food and Drug Administration-approved contraceptive methods' despite their known abortifacient[1] mechanisms of action."  Compl. ¶ 5.

---

[1] Plaintiffs use the word "abortifacient" to refer to drugs such as Plan B and Ella that they allege cause abortions.  *See, e.g.,*

On February 8, 2013, plaintiffs moved for a preliminary
injunction as to Count I, which alleges a violation of the
Religious Freedom Restoration Act ("RFRA").  Plaintiffs argue
that they satisfy the standard for a preliminary injunction
because they are likely to succeed on the merits because the
RFRA "substantially burdens" plaintiffs' free exercise of
religion and defendants cannot establish that the regulations
survive strict scrutiny.  Furthermore, plaintiffs argue, they
will suffer irreparable harm absent a preliminary injunction,
the balance of equities tips in plaintiffs' favor, and the
public interest favors a preliminary injunction.

**II.  STANDARD OF REVIEW**

A plaintiff seeking a preliminary injunction must establish
(1) a substantial likelihood of success on the merits; (2) that
it is likely to suffer irreparable harm in the absence of
preliminary relief; (3) that the balance of equities tips in its
favor; and (4) that an injunction is in the public interest.
*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297
(D.C. Cir. 2006).  The purpose of a preliminary injunction "is
merely to preserve the relative positions of the parties until a
trial on the merits can be held."  *Univ. of Tex. v. Camenish*,
451 U.S. 390, 395 (1981).  It is "an extraordinary and drastic

---

Compl. ¶ 5.  Plaintiffs do not allege that the regulations will
require them to provide insurance coverage for the medical
procedure of abortion.

6

remedy" and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  In this Circuit, these four factors have typically been evaluated on a "sliding scale," such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).  The Circuit has recently stated, without holding, that existing Supreme Court precedent suggests "that a likelihood of success is an independent, free-standing requirement for a preliminary injunction." *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (citing *Winter* but finding that preliminary injunction was not appropriate even under less stringent sliding-scale analysis).  Because this Court finds that plaintiffs have failed to establish a likelihood of success, a preliminary injunction is not appropriate under either standard, and the Court need not reach the issue raised in *Sherley*.  *See, e.g., In re Akers*, --- B.R. ----, 2012 WL 5419318, at *4 (D.D.C. 2012) (stating that, "[w]hichever way *Winter* is read, it is clear that a failure to show a likelihood of success on the merits alone is sufficient to defeat a preliminary injunction motion"); *Arkansas Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agr.*, 573 F.3d 815, 832 (D.C. Cir. 2009) (declining to proceed to review remaining preliminary

injunction factors when plaintiff had shown no likelihood of success on the merits); *see Apotex, Inc. v. FDA*, 449 F.3d 1249, 1253 (D.C. Cir. 2006) (determining movant was not likely to succeed on the merits and declining to address the other factors).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

The Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb-1, provides that "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section."  Subsection (b) provides that "[g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

Congress enacted the RFRA in response to the Supreme Court's decision in *Employment Division, Department of Human Services of Oregon v. Smith*, 494 U.S. 872 (1990), in which the Court held that the right to free exercise of religion under the First Amendment does not exempt an individual from a law that is neutral and of general applicability, and explicitly disavowed the test used in earlier decisions, which prohibited the

government from substantially burdening a plaintiff's religious exercise unless the government could show that its action served a compelling interest and was the least restrictive means to achieve that interest.  42 U.S.C. § 2000bb.  The purpose of the RFRA was to "restore the compelling interest test" as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972).  *Id.*

The RFRA does not define "substantial burden" but because the RFRA intends to restore *Sherbert v. Verner* and *Wisconsin v. Yoder*, those cases are instructive in determining the meaning of "substantial burden."  In *Sherbert*, plaintiff's exercise of her religion was impermissibly burdened when plaintiff was forced to choose between following the precepts of her religion" resting and not working on the Sabbath and forfeiting certain unemployment benefits as a result, or "abandoning one of the precepts of her religion in order to accept work."  374 U.S. at 404.  In *Yoder*, the "impact of the compulsory [school] attendance law on respondents' practice of the Amish religion [was found to be] not only severe, but inescapable, for the Wisconsin law affirmatively compels them, under threat of criminal sanction, to perform acts undeniably at odds with

fundamental tenets of their religious beliefs."  406 U.S. at 218.[2]

Plaintiffs argue that their exercise of religion is substantially burdened because "they must facilitate, subsidize, and encourage the use of goods and services that they sincerely believe are immoral or suffer severe penalties."  Pls.' Mot. for Prelim. Injunction ("Pls.' Br.") at 13.  Plaintiffs argue that the substantial burden imposed on the Freshway Corporations is the same as that imposed upon the Gilardis because the "beliefs of the Gilardis extend to, and are reflected in, the actions of the two corporations."  *Id.* at 14.

As an initial matter, the Court is troubled by plaintiffs' apparent disregard of the corporate form in this case. Plaintiffs argue that "requiring the two corporations to provide group health coverage that the Gilardis consider immoral is the same as requiring the Gilardis themselves to provide such immoral coverage."  *Id.* at 14.  The Court strongly disagrees. The Gilardis have chosen to conduct their business through corporations, with their accompanying rights and benefits and limited liability.  They cannot simply disregard that same

---

[2] In a recent case, the government conceded that the Controlled Substances Act placed a "substantial burden" on the "sincere exercise of religion" by a religious sect that would be prohibited from engaging in their traditional communion in which they used a hallucinogenic tea.  *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 426 (2006).

corporate status when it is advantageous to do so.  In a recent
case dealing with similar issues, *Autocam Corp. v. Sebelius*, the
court noted that

> [a]s corporate owners, [plaintiffs] quite properly
> enjoy the protections and benefits of the corporate
> form.  But the legal separation of the owners from the
> corporate enterprise itself also has implcations at
> the enterprise level.  A corporate form brings
> obligations as well as benefits.  "When followers of a
> particular sect enter into commercial activities as a
> matter of choice, the limits they accept on their own
> conduct as a matter of conscience and faith are not to
> be superimposed on the statutory schemes which are
> binding on others in that activity."  *United States v.
> lee*, 455 U.S. 252, 263, n.3 (1982).  Whatever the
> ultimate limits of this principle may be, at a minimum
> it means the corporation is not the *alter ego* of its
> owners for purposes of religious belief and exercise.

No. 12-1096, 2012 WL 6845677, at *7 (W.D. Mich. Dec. 24, 2012)
(denying motion for preliminary injunction on similar facts),
*injunction pending appeal denied*, No. 12-2673 (6th Cir. Dec. 28,
2013).  Similarly, the court in *Conestoga Wood Specialties, Inc.
v. Sebelius* stated that

> '[I]ncorporation's basic purpose is to create a
> distinct legal entity, with legal rights, obligations,
> powers, and privileges different from those of the
> natural individuals who created it, who own it, or
> whom it employs.'  *Cedric Kushner Promotions, Ltd. v.
> King*, 533 U.S. 158, 163 (2001). . . . It would be
> entirely inconsistent to allow [individual plaintiffs]
> to enjoy the benefits of incorporation, while
> simultaneously piercing the corporate veil for the
> limited purpose to challenge these regulations.  We
> agree with the *Autocam court*, which stated that this
> separation between a corporation and its owners "at a
> minimum [ ] means the corporation is not the *alter ego*
> of its owners for the purposes of religious belief and
> exercise."

No. 12-6744, 2013 WL 140110, at *8 (E.D. Pa. Jan. 11, 2013), *injunction pending appeal denied*, No. 13-1144 (3d Cir. Jan. 29, 2013).

The Court agrees with the *Autocam* and *Conestoga* courts and finds that the Gilardis cannot simply impute their views onto the corporation such that requiring the corporation to provide preventive services coverage is the same as requiring the Gilardis personally to provide preventive services coverage. The Freshway Corporations are legally separate from the Gilardis.  As such, their religious views, legal and statutory obligations, and benefits cannot be imputed to each other. Accordingly, they must be evaluated separately for purposes of the RFRA.

1. The Freshway Corporations' RFRA Claim

Plaintiffs argue that the substantial burden imposed on the Freshway Corporations is the same as that imposed upon the Gilardis because the "beliefs of the Gilardis extend to, and are reflected in, the actions of the two corporations."  Pls.' Br. at 14.  Plaintiffs contend that "requiring the two corporations to provide group health coverage that the Gilardis consider immoral is the same as requiring the Gilardis themselves to provide such immoral coverage."  Pls.' Br. at 13.  Defendants respond that the coverage regulations do not substantially burden any exercise of religion because secular, for-profit

corporations do not exercise religion.  Defs.' Opp. to Pls.'
Mot. for Prelim. Injunction ("Defs.' Br.") at 11-12.

As explained above, the Court declines to disregard the
corporate form by imputing the religious beliefs of the Gilardis
to the corporations they own.  Accordingly, the Court must
evaluate whether providing preventive services coverage will
cause a substantial burden on the religious exercise of the
Freshway Corporations.

**(a)  Substantial Burden**

The RFRA states that "[g]overnment shall not substantially
burden a person's exercise of religion . . . ."  42 U.S.C. §§
2000bb-1(a).  Accordingly, a threshold issue is whether the
Freshway Corporations "exercise" religion.  For the reasons
explained below, the Court finds that they do not.[3]

The Freshway Corporations are secular, for-profit
corporations that are engaged in the processing, packing, and
shipping of produce and other refrigerated products, Compl. ¶¶
16-18, and have a total of about 400 employees between the
companies, *id*. ¶¶ 17-18.  The complaint states the following
allegations regarding the religious activities of the Freshway
Corporations: Freshway Foods makes annual monetary and/or in-
kind donations, primarily food, to many community non-profit

---

[3] Because the Court finds that the Freshway Corporations do not
exercise religion, the Court does not reach the question of
whether they are "persons" within the scope of the RFRA.

charitable organizations, including the YMCA, Habitat for Humanity, the American Legion, and Holy Angel's Soup Kitchen. Compl. ¶ 28(d).  Freshway Logistics donates a trailer for use by the local Catholic parish for its annual picnic and uses its trucks to deliver food donated by Freshway Foods to food banks. Compl. ¶ 28(e).  During monthly employee appreciation lunches, the Freshway Corporations provide alternative foods for their employees to accommodate restrictions posed by their various religions.  Compl. ¶ 28(f).  They also provide their Muslim employees with space to pray during breaks, and during Ramadan, employees are permitted to adjust break periods in order to eat after sundown in accordance with their religion. Compl. ¶ 28(g).

Several allegations in the complaint allege the Gilardis' religious activities taken in connection with the company.  The complaint states that, for the last ten years "Francis and Philip Gilardi have affixed to the back of the trucks they own through a separate company, but which bear the name of Freshway Foods, a sign stating 'It's not a choice, it's a child,' as a way to promote their pro-life views to the public."  Compl. ¶ 28(a).  The Gilardis also drafted a values statement listing values by which the Freshway Companies would be run.  The statement lists "Ethics: Honest, Trustworthy and Responsible to:

-Each Other; -Our Customers; -Our Vendors.  Non-negotiable –
Supersedes everything."  Compl. ¶ 28(c).[4]

The Court is not persuaded that it must consider the
Gilardis' actions in drafting values statements and in affixing
a slogan to their delivery trucks.  Even considering these
actions, however, the court finds that they are insufficient to
establish religious activity taken by the Freshway Corporations.
The statement of values drafted by the Gilardis does not mention
religion at all, and the affixing of a slogan to the back of a
delivery truck is incidental, at most, to the activities of the
corporations.

That leaves the Court with the stated activities of the
Freshway Corporations.  The corporations' charitable activities
and accommodations of their employees who practice other
religions, while commendable, do not establish that the Freshway
Corporations themselves "exercise religion."  Rather, the Court
finds that the Freshway Corporations are engaged in purely
commercial conduct and do not exercise religion under the RFRA.

The cases cited by plaintiffs do not compel a different
result.  For example, in *Tyndale House Publishers, Inc. v.
Sebelius*, the court noted the "unique" structure of the

---

[4] The complaint also alleges that the Gilardis "strongly support
financially and otherwise their Catholic parish, schools, and
seminary."  Compl. ¶ 28(b).  The complaint does not allege any
connection between this activity and the Freshway Corporations.

plaintiff corporation, which was formed to publish religious books and Bibles and was owned in large part by a non-profit religious entity.  No. 12-1635, 2012 U.S. Dist. LEXIS 163965, at *24 n.10.  In deciding whether Tyndale's owners had standing to assert a free exercise claim on Tyndale's behalf—a different issue than the issue currently before this Court—the court held that "when the beliefs of a closely-held corporation and its owners are inseparable, the corporation should be deemed the alter ego of its owners for religious purposes." *Id*. at *25. In this case, two large produce distribution companies are owned by two people who are members of the Catholic faith.  The religious beliefs of the Gildardis cannot fairly be said to be "inseparable" from the religious beliefs of the Freshway Corporations.  Indeed, on the record before the Court, there is nothing to suggest that the corporations have any religious beliefs.  Accordingly, the Court finds *Tyndale* to be distinguishable from this case.

Plaintiffs also argue that the religious beliefs of the Gilardis should be taken into account because "corporations do not run themselves or comply with legal mandates except through human agency."  Pls.' Reply in Supp. of Mot. for Prelim. Injunction ("Pls.' Reply") at 11.  They further contend, citing the recent decision of *Korte v. United States Department of Health and Human Services*, that the Gilardis would have to

16

operate the companies in a manner that they believe to be immoral in order to comply with the preventive services requirement.  *Id.* at 11 (citing No. 12-3841, 2012 U.S. App. LEXIS 26734, at *9 (7th Cir. Dec. 28, 2012)).  In *Korte*, the district court denied injunctive relief on an RFRA claim to a secular, for-profit construction company that challenged the preventive services coverage requirement.  No. 12-1072, 2012 WL 6553996 (S.D. Ill. Dec. 14, 2012).  In that case, the district court found that any burden on the individual owners' religious beliefs caused by the corporation's coverage of contraceptive services was "too distant to constitute a substantial burden." *Id*. at *10.  The Seventh Circuit granted an injunction pending appeal.  2012 U.S. App. LEXIS 26734, at *9.  The Seventh Circuit held that the corporate form was not dispositive of the individual plaintiffs' claim because in order for the company to comply with the mandate, the individual plaintiffs would be required to violate their religious beliefs.  *Id*.  For the reasons stated above, the Court finds that the corporate form is dispositive in this case and should not be disregarded.  In this respect, the court relies on several recent decisions.  *See Hobby Lobby Stores, Inc. v. Sebelius*, 870 F. Supp. 2d 1278, 1291 (W.D. Okla. 2012) (distinguishing between the "purely personal" matter of religious exercise by a corporation's owners and the actions of a corporation), *injunction pending appeal denied*, No.

17

12-6294, 2012 WL 6930302 (10th Cir. Dec. 20, 2012); *Conestoga*, No. 12-6744, 2013 WL 140110, at *10 (E.D. Pa. Jan. 11, 2013) (treating corporation and its owners separate for purposes of RFRA and finding that the secular, for-profit corporation did not exercise religion); *see also Conestoga*, No. 13-1144, slip. op. at 3 (3d. Cir. Jan. 29, 2013) (adopting district court's reasoning that plaintiff corporation did not exercise religion under RFRA).  To the extent that *Korte* suggests a different result, the Court declines to follow it.

The Court declines to reach the question of whether *any* secular, for-profit corporation can exercise religion.  *Cf. Hobby Lobby Stores,* 870 F. Supp. 2d at 1291 (holding that plaintiff corporations lacked standing to pursue an RFRA claim and stating that "[g]eneral business corporations do not, separate and apart from the actions or belief systems of their individual owners or employees, exercise religion.  They do not pray, worship, observe sacraments or take other religiously-motivated actions separate and apart from the intention and direction of their individual actors."); *Briscoe v. Sebelius*, No. 13-285, 2013 U.S. Dist. LEXIS 26911, at *15 (D. Colo. Feb. 27, 2013) ("Secular, for-profit corporations neither exercise nor practice religion.").  Rather, under the facts of this case, the Freshway Corporations do not exercise religion and therefore

18

cannot succeed on the merits of a claim that the regulations substantially burden their exercise of religion.

2. <u>The Gilardis' RFRA Claim</u>

The Gilardis allege that the regulations create a substantial burden on the Gilardis' exercise of religion because the regulations require them to "facilitate, subsidize, and encourage the use of goods and services that they sincerely believe are immoral or suffer severe penalties.  It is this forced subsidization, and not the manner in which the employee may spend their own money or conduct their personal lives, to which plaintiffs object."  Pls.' Br. at 13.

With respect to the Gilardis, defendants argue that the regulations do not create a substantial burden because they only apply to the corporations, not their owners.  Defs.' Br. at 18.  Defendants also argue that even if the regulations did create a burden on the Gilardis' exercise of their religion, that burden is too attenuated and indirect to be substantial.  *Id.* at 23.

**(a)  Substantial Burden**

As an initial matter, the Court declines to follow several recent cases suggesting that a plaintiff can meet his burden of establishing that a law creates a "substantial burden" upon his exercise of religion simply because he claims it to be so.  *See Monaghan v. Sebelius*, No. 12-15488, 2012 U.S. Dist. LEXIS 182857, at *10-11 (E.D. Mich. Dec. 30, 2012) (stating that

because Monaghan claimed that "taking steps to have [the
company] provide contraception coverage violates his beliefs as
a Catholic," the court "will assume that abiding by the mandate
would substantially burden Monaghan's adherence to the Catholic
Church's teachings); *Legatus v. Sebelius*, No. 12-12061, 2012
U.S. Dist. LEXIS 156144, at *20 (E.D. Mich. Oct. 31, 2012)
(stating that plaintiff shows a substantial burden simply by
saying so).  The Court agrees with the reasoning of the court in
*Conestoga*, in stating that "[w]hile we wholeheartedly agree that
'courts are not arbiters of scriptural interpretation,'" the
RFRA still imposes the requirement on courts to determine
"whether the burden a law imposes on a plaintiff's stated
religious belief is 'substantial.'"  *Conestoga*, 2013 WL 140110,
at *12 (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*,
450 U.S. 707, 718 (1981)).  Determining whether the impact of
the regulation on plaintiffs' religious exercise is
"substantial" thus necessarily requires an understanding of the
nature of the religious exercise.  Otherwise, as the *Conestoga*
court noted, "[i]f every plaintiff were permitted to
unilaterally determine that a law burdened their religious
beliefs, and courts were required to assume that such burden was
substantial, simply because the plaintiff claimed it was the
case, then the standard expressed by Congress under the RFRA
would convert to an 'any burden' standard."  *Id*. at *13 (citing

*Washington v. Klem*, 497 F.3d 272, 279-81 (3d Cir. 2007)); *see*
*Autocam*, 2012 WL 6845677, at *7 (stating that if a court cannot
look beyond plaintiffs' assertion of religious belief, every
governmental regulation would be subject to a "private veto").
Accordingly, the Court finds that it is necessary to determine
the nature of plaintiffs' religious exercise in order to
determine whether it has been "substantially burdened."

Here, plaintiffs have made several arguments regarding the
nature of their religious exercise.  The Gilardis "hold to the
teachings of the Catholic Church regarding the sanctity of human
life from conception to natural death.  They sincerely believe
that actions intended to terminate an innocent human life by
abortion are gravely sinful."  Compl. ¶ 25.  The Gilardis "also
sincerely believe in the Catholic Church's teaching regarding
the immorality of artificial means of contraception and
sterilization."  *Id*. ¶ 26.  The Gilardis state that they "have
concluded that complying with the Mandate would require them to
violate their religious beliefs and moral values because the
Mandate requires them and/or the corporations they own and
control to arrange for, pay for, provide, and facilitate
contraception methods, sterilization procedures, and abortion
because certain drugs and devices [come within the scope of the
HRSA guidelines] despite their known abortifacient mechanisms of
action."  *Id*. ¶ 5.  "Plaintiffs cannot arrange for, pay for,

provide, or facilitate employee health plan coverage for contraceptives, sterilization, abortion, or related education and counseling without violating their sincerely-held religious beliefs and moral values." *Id*. ¶ 32.

Having set forth the nature of the Gilardis' religious exercise, the Court must next determine whether the requirement that the Freshway Corporations comply with the regulations constitutes a "substantial burden" on the Gilardis' exercise of religion. The Court finds that it does not.

The regulations do not compel the Gilardis to personally "arrange for, pay for, provide or facilitate" health coverage. *See Hobby Lobby*, 870 F. Supp. 2d at 1294 ("The mandate in question applies only to Hobby Lobby and Marden, not to its officers or owners."). The regulations do not require the Gilardis to "personally support, endorse, or engage in pro-abortion or pro-contraception activity." *Briscoe*, 2013 U.S. Dist. LEXIS 26911, at *16. Rather, the regulations are imposed on the Freshway Corporations. For the reasons explained above, the Court declines to disregard the corporate form. Specifically, the Court finds that the Freshway Corporations are not the *alter egos* of the Gilardis for the limited purpose of asserting the Gilardis' religious beliefs.[5] The Gilardis remain

---

[5] Plaintiffs have not requested, nor does the Court understand their argument to be, that the Court find that the Freshway

free to personally oppose contraception and, indeed, even the regulations that are the subject of this lawsuit. Accordingly, the Court finds that the regulations do not impose a substantial burden on the Gilardis' exercise of religion.

The plaintiffs argue that "indirectness" is not a barrier to finding a substantial burden. Pls.' Br. at 13 (citing *Thomas*, 450 U.S. at 718). Plaintiffs argue that *Thomas* established that the impact of a "substantial burden" need not be direct. Pls.' Reply at 11. Plaintiffs misread *Thomas*. In that case, the Supreme Court held that Indiana's denial of unemployment compensation benefits to claimant, who quit his job because his religious beliefs forbade participation in the production of armaments, violated his First Amendment right to free exercise of religion. In that case, however, the burden of the denial of benefits rested with the person exercising his religion, not a separate person or corporate entity, as is the case here. The compulsion was indirect, rather than the burden, as in this case. *See Conestoga*, 2013 WL 140110, at *14 n.15 (distinguishing *Thomas*). The Court therefore finds *Thomas* to be distinguishable.

The Court also does not find the fact that the health insurance provided by the Freshway Corporations is through a

---

Corporations are the *alter egos* of the Gilardis for all purposes.

23

"self-insurance" mechanism compels a different result.  *Compare Tyndale*, 2012 U.S. Dist. LEXIS 163965, at *42-43 (finding that a self-insured plan differed materially from a group policy because in a self-insurance scheme the plaintiff "directly pays for the services used by its plan participants, thereby removing one of the 'degrees' of separation that the court deemed relevant in *O'Brien*") *with Briscoe*, 2013 U.S. Dist. LEXIS 26911, at *15 (denying injunctive relief under RFRA for plaintiff corporation that provided self-insured plan) *and Grote Industries, LLC v. Sebelius*, No. 12-134, 2012 WL 6725905, at *7 (S.D. Ind. Dec. 27, 2012) (same), *injunction granted pending appeal*, No. 13-1077, 2013 WL 362725 (7th Cir. Jan. 30, 2013). The Court finds that self-insurance, as is the case here, is not dispositive.  The Freshway Corporations are providing the insurance, not the Gilardis.  Accordingly, the Court finds that the Gilardis have failed to demonstrate a likelihood of success in establishing a "substantial burden" on their exercise of religion.

**IV.  CONCLUSION**

For all of the foregoing reasons, the Court finds that plaintiffs have failed to demonstrate a likelihood of success on the merits, and plaintiffs' motion for a preliminary injunction is **DENIED**.  Because the Court has decided the motion on the papers pursuant to Local Civil Rule 65.1(d), the motions hearing

currently scheduled for March 6, 2013 is hereby **CANCELED**.  An

appropriate Order accompanies this Memorandum Opinion.


**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            March 3, 2013**